UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
MIDEUM JUNG,                                  :
                                              :     **DECISION AND ORDER**
                              Plaintiffs,      :
                                              :     16-CV-6097 (PK)
              -against-                        :
                                              :
DIANE D. KELLY and MERCK & CO., INC.,  :
                                              :
                              Defendants.      :
                                              :
-------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Mideum Jung ("Plaintiff") brought this action against Diane D. Kelly and Merck & Co., Inc.

("Defendants"), alleging a "serious injury" under New York Insurance Law Section 5102(d) to

recover for injuries suffered as a result of a motor vehicle collision.[1]

Before this Court is Defendants' motion for summary judgment (the "Motion") (Dkt. 43),

pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated herein, the Motion is granted

in part and denied in part.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from Defendants' Statement of Material Facts Pursuant to

Local Rule 56.1 ("Def. 56.1 Stmt.," Dkt. 44), Plaintiff's Counter-Statement of Material Facts ("Pl.

56.1 Stmt.," Dkt. 50), its supporting documents, the Declaration of Alex M. Temple, Esq. in

Support of the Motion ("Temple Decl.," Dkt. 45), and its supporting documents.

#### A.    The Collision

On September 14, 2015, defendant Kelly was driving a vehicle during the course of her

---

[1] Plaintiff Hannah Jung and defendant Wheels LT were originally named but dismissed from the case on
March 8, 2019.  (Dkts. 41–42.)

employment with defendant Merck & Co., Inc., when it came into contact with the vehicle driven by Plaintiff on or near a ramp to the New Jersey-bound entrance to the Holland Tunnel. (Def. 56.1 Stmt. ¶¶ 2, 4; Ex. G to Pl. 56.1 Stmt., Plaintiff Mideum Jung's Affidavit ("Jung Aff.") ¶ 2, Dkt. 50-7.) No airbags deployed during the collision. (Def. 56.1 Stmt. ¶ 12.) Plaintiff was wearing his seat belt and it remained fastened. (*Id.* ¶ 10.) Defendant Kelly testified that her vehicle was traveling at a rate of less than one mile per hour immediately before the collision (Ex. D to Def. 56.1 Stmt., Kelly Deposition Transcript at 51, Dkt. 45-4) and characterized the contact between the vehicles as "extremely light" (*id.* at 54). Plaintiff testified that he believes his vehicle was stopped at the time of the collision. (Ex. E to Def. 56.1 Stmt., Jung Deposition Transcript ("Jung Dep.") at 63, Dkt. 45-5.) After speaking with the police, Plaintiff drove home. (Def. 56.1 Stmt. ¶ 14.) He testified at his deposition to first feeling pain in his right shoulder that evening, and on his back and neck "within that week [or] three or four days later." (Jung Dep. at 90-91.) He later asserted that he "immediately [...] began to suffer from severe and persistent pain on the right shoulder, neck and lower back." (Jung Aff. ¶ 3.)

    **B.**   **Plaintiff's Medical Treatment**

        *1.*   <u>*Immediate Medical Treatment*</u>

Beginning September 17, 2015 and continuing through January 8, 2016, Plaintiff received massage therapy, chiropractic treatment, and acupuncture treatment approximately three times per week at Apple Pain Management & Rehab ("Apple"). (Pl. 56.1 Stmt. at 5, ¶ 2; Jung Aff. ¶ 4.) Plaintiff stopped treatment because his no fault benefit was terminated and he could no longer afford treatments. (Jung. Aff. ¶ 4.)

An MRI of Plaintiff's lower back and neck on November 3, 2015 revealed several bulging discs, and an MRI of the right shoulder on November 5, 2015 revealed an anterior superior lubral tear, a deltoid tear, and "[p]artial tears of the subscapularis, supraspinatus and infraspinatus

tendons." (Jung Aff. ¶¶ 10-12; Ex. B. to Pl. 56.1 Stmt., Dkt. 50-2.)

To treat his lumbar spine injuries, Jung received lumbar injections on February 5 and 6, 2016. (Pl. 56.1 Stmt. at 7, ¶¶ 14—16.) The post-operative diagnosis for the February 5, 2016 procedure was "myofascial pain" (Ex. A to Pl. 56.1 Stmt., Dkt. 50-1 at 6) and the post-operative diagnosis for the February 6, 2016 procedure was several injuries to the lumbar spine. (*Id.*)

Between June 17, 2016 and August 4, 2016, Plaintiff sought treatment at Northern Physical Therapy, Chiropractic and Acupuncture, PLLC approximately once a week. (Pl. 56.1 Stmt. at 5, ¶ 3; Jung Aff. ¶ 4.)

> ### 2. *Dr. Arden Kaisman Treatment*

Dr. Arden Kaisman[2] examined Plaintiff on June 2, 2016. (Pl. 56.1 Stmt. at 11, ¶ 27; Ex. F to Pl. 56.1 Stmt. ("Kaisman Aff.") ¶ 10, Dkt. 50-6.) Dr. Kaisman performed a range of motion test using a goniometer on the cervical spine and found that Plaintiff was restricted (from a normal range) in forward flexion by 15 degrees, extension by 20 degrees, right and left lateral bending by 15 degrees, and right and left lateral rotation by 40 degrees. (Kaisman Aff. ¶¶ 11.) Plaintiff's biceps reflexes were slightly decreased, but Dr. Kaisman found normal triceps reflexes and normal motor strength in the upper extremities. (*Id.*) There was mild-to-moderate pain and spasms in the cervical spine. (*Id.*) Range of motion in the lumbar spine was restricted (from the normal range) in forward flexion by 35 degrees, extension by 30 degrees, right and left lateral bending by 5 degrees, right and left lateral rotation by 20 degrees. (*Id.* ¶ 15.) Palpation revealed some pain and spasms. (*Id.*)

Because more conservative treatment measures had failed, on June 10, 2016, Dr. Kaisman performed a percutaneous discectomy on Plaintiff's lumbar spine. (Pl. 56.1 Stmt. at 7, ¶ 12; Jung Aff. ¶ 7; Ex. I to Pl. 56.1 Stmt., Dkt. 50-9; Kaisman Aff. ¶ 5.) The post-operative diagnosis was bulging discs and lumbar radiculopathy. (Kaisman Aff. ¶ 7.)

---

[2] Defendants describe him as an anesthesiologist and pain management specialist. (Defs.' Memo of Law at 4.)

On June 24, 2016, again due to the failure of more conservative therapy, Dr. Kaisman performed a percutaneous discectomy on Plaintiff's cervical spine. (Pl.'s 56.1 Stmt. at 6, ¶ 10; Jung Aff. ¶ 7; Ex. I to Pl. 56.1 Stmt. at 4; Kaisman Aff. ¶ 5.) The post-operative diagnosis was bulging discs and cervical radiculopathy. (Kaisman Aff. ¶ 6.)

### 3. *Dr. Mark McMahon Treatment*

Dr. Mark McMahon, a licensed doctor of orthopedic surgery, examined Plaintiff on September 16, 2016. (Pl. 56.1 Stmt. at 8, ¶ 17; Jung Aff. ¶ 4; Ex. D to Pl. 56.1 Stmt. ("McMahon Aff.") ¶ 2, Dkt. 50-4.) At this initial examination, Dr. McMahon performed a range of motion test and found Plaintiff's right shoulder elevation was restricted by 5 degrees and his internal rotation was restricted to T12 (where normal is T10). (McMahon Aff. ¶ 13.)

On October 21, 2016, Dr. McMahon performed arthroscopic surgery on Plaintiff's right shoulder. (Pl. 56.1 Stmt. at 6, ¶ 8; Jung Aff. ¶ 8; Ex. H to Pl. 56.1 Stmt., Operative Report of Dr. Mark McMahon, Dkt. 50-8 at 2.) Dr. McMahon's post-operative diagnosis was a labral tear and additional partial tears. (McMahon Aff. ¶ 14.)

Plaintiff returned to Dr. McMahon's office on November 1, 2016 for suture removal. (*Id.* ¶ 15.) Dr. McMahon found Plaintiff's elevation restricted by 10 degrees, internal rotation limited to L4 (where normal is T10), and external rotation restricted by 10 degrees. (*Id.*)

## C. July 4, 2017 Car Collision

On July 4, 2017, Plaintiff was in a second car collision. (Pl. 56.1 Stmt. ¶ 39; Jung Aff. ¶ 13.) Plaintiff sustained an injury to his right knee. (Jung Aff. ¶ 13.) When asked if he felt any increased pain in his neck, lower back or right shoulder as a result of that accident, Plaintiff testified, "I don't think so." (Ex. E to Temple Decl., "Jung Dep." at 130-131.) Both Dr. Kaisman and Dr. McMahon affirm that Plaintiff sustained injuries to his right knee stemming from this accident. (Kaisman Aff. ¶ 9; McMahon Aff. ¶ 10.) After this collision, Plaintiff sought treatment at Gaon Rehab & Wellness

Clinic for his right knee.  (Ex Q to Temple Decl. ("Gaon Records") at 45-46, Dkt. 45-17.)[3]  Records

from Comprehensive Medical Office, P.C., dated August 9, 2017, show that Plaintiff "felt immediate

pain in the wrist and the knee area.  Mild neck and low back pain has subsided right away.  Pain

causes limited movements of the wrist and both knees.  Prolonged standing causes pain in both

knees."  (Ex. R to Temple Decl., Dkt. 45-18 at 5-6.)

### D. Further Examination by Dr. McMahon

Plaintiff was examined again by Dr. McMahon on October 2, 2017.  (Pl. 56.1 Stmt. at 8, ¶

17; Jung Aff. ¶ 4.)  Dr. McMahon performed range of motion tests on Plaintiff's right shoulder,

cervical spine, and lumbar spine, using a goniometer and "actively moving the affected area by

hand."  (McMahon Aff. ¶¶ 16, 20, 24.)  With respect to the right shoulder, Dr. McMahon again

found that elevation was restricted by 15 degrees, internal rotation was limited to T12 (where normal

is T10), and external rotation was restricted by 20 degrees.  (*Id.* ¶ 16.)  Related to the cervical spine,

Dr. McMahon found that flexing was restricted by 15 degrees, extending by 20 degrees, and bending

to the left and right by 20 and 10 degrees, respectively.  (*Id.* ¶ 19.)  With respect to the lumbar spine,

Plaintiff was restricted in flexing by 5 degrees.  (*Id.* ¶ 23.)

Based on his review of Plaintiff's medical records, including the MRI films, his examinations

of September 16, 2016, November 1, 2016, and October 2, 2017, and the arthroscopic surgery he

performed on October 21, 2016, Dr. McMahon reached the following diagnoses: (1) "[r]ight

shoulder tear of the deltoid ligament, SLAP tear of the labrum, synovitis and a partial tear of the

subscapularis tendon … (2) [c]ervical spine bulging discs at C5-6 and C6-7 encroaching on the canal

… and (3) "[l]umbar spine disc bulges at L3-4, L4-5 and L5-S1 narrowing the L1 neural foramina

---

[3] In the initial evaluation for physical therapy following this accident, Plaintiff's left shoulder—in addition to his knee—is identified as a "Chief Complaint," and there are markings on a diagram indicating complaints at the left shoulder, the neck, and the right knee.  In addition, there is reduced range of motion to the left shoulder.  (Gaon Records at 45-46.)

bilaterally and the L3-4 right neural foramen." (*Id.* ¶ 27.)  In his undated affirmation prepared after the October 2, 2107 examination, Dr. McMahon describes a "poor" prognosis for Plaintiff, finding that Plaintiff's injuries, specifically to the right shoulder, lumbar spine and cervical spine, are "permanent in nature to a reasonable degrees [sic] of medical certainty and have resulted in the permanent consequential limitation of use of a body organ or member," as well as a "significant limitation of use of the body function or system." (*Id.* ¶¶ 28, 33.)  Dr. McMahon opines "within a reasonable degree of medical certainty" that these injuries are "solely caused by the September 14, 2015 accident and not from [a] degenerative condition." (*Id.* ¶¶ 28, 34.)  Dr. McMahon also stated that Plaintiff's injuries "have prevented him from performing many of the material acts which constitute his usual and customary daily activities since the date of the motor vehicle accident of September 14, 2015.  Plaintiff [] was therefore advised to discontinue from engaging in any strenuous activities." (*Id.* at ¶ 32.)

### E.    Examination by Defendants' Medical Experts

#### 1.    <u>*Dr. Richard Lechtenberg*</u>

Plaintiff submitted to an independent neurologic examination performed by Dr. Richard Lechtenberg, a licensed neurologist, at the request of Defendants, on October 30, 2017.  (Ex. N to Temple Decl. ("Lechtenberg Eval."), Dkt. 45-14.)  The range of motion examination included visual observation and goniometric measurements.  (*Id.* at 3.)  Dr. Lechtenberg found Plaintiff's range of motion to be normal, including of the cervical spine, thoracic spine, lumbar spine and shoulders. (Lechtenberg Eval. at 3-4.)  Dr. Lechtenberg noted that Plaintiff's MRI reports from November 3, 2015 and November 5, 2015 describe disc bulging in the lumbar spine and cervical spine, but he found "no objective, clinical, neurologic deficits" in his examination of Plaintiff "correlating with these reported findings." (*Id.* at 5.)  Dr. Lechtenberg concluded, "My impression is that this man had no objective, clinical, neurologic deficits on my examination.  From a neurologic standpoint he

is not disabled and is currently working. The neurologic prognosis is good." (*Id.* at 4.)

        2.    *Dr. Edward A Toriello*

At the request of Defendants, Plaintiff was also evaluated by Dr. Edward A. Toriello, a board-certified orthopedic surgeon, on November 14, 2017. (Ex. M. to Temple Decl. ("Toriello Eval."), Dkt. 45-13.) Dr. Toriello performed an orthopedic evaluation, assessing visually and through a goniometer or inclinometer, and found the results of the testing of Plaintiff's cervical spine, right shoulder, left shoulder, and lumbar spine all to be normal, including "full, pain-free range of motion" of the cervical spine and lumbar spine, and "full, pain free abduction and flexion" of the right and left shoulders within normal ranges. (*Id.* at 2-3.) Dr. Toriello reviewed the MRIs of the lumbar spine, cervical spine, and right shoulder and found a partial rotator cuff tear in the right shoulder, and no abnormality of the cervical spine or lumbar spine. (*Id.* at 3.) His diagnosis was that Plaintiff's cervical strain, low back strain and right shoulder contusion were all resolved. (*Id.* at 4) In addition, he found that Plaintiff has "no objective evidence of continued disability," "is able to work and perform his normal daily living activities without restriction," and has an "excellent" prognosis. (*Id.*) Dr. Toriello concluded that "based on the fact that the MRIs of the neck, lower back and right shoulder that were done shortly after the accident revealed no evidence of any causally related traumatic injury to these body parts that would have required surgery," Plaintiff "did not sustain any injury to his neck, lower back or right shoulder on 09/14/15 that would have required surgical intervention." (*Id.*)

**F.    Further Examination by Dr. Kaisman**

Plaintiff was examined again by Dr. Kaisman on November 16, 2017. (Jung Aff. ¶ 4; Kaisman Aff. ¶ 10.) Dr. Kaisman performed range of motion tests with a goniometer on Plaintiff's lumbar spine and cervical spine. With respect to the lumbar spine, Dr. Kaisman found that Plaintiff was limited from normal range by 40 degrees for forward flexion, 10 degrees for extension, 10

degrees for lateral bending, and 30 degrees for lateral rotation. (Kaisman Aff. ¶ 16.) Dr. Kaisman found that Plaintiff's cervical spine was limited by 10 degrees for forward flexion, 15 degrees for extension, 15 degrees for lateral bending, and 30 degrees for lateral rotation. (*Id.* ¶ 12.) Dr. Kaisman also noted that palpation of the cervical spine resulted in Plaintiff experiencing mild-to-moderate pain and spasm. (*Id.*)

In his undated affirmation, Dr. Kaisman found that the prognosis for Plaintiff "is guarded at this time." (*Id.* ¶ 20.) He concludes that injuries to Plaintiff's cervical spine and lumbar spine "are permanent in nature to a reasonable degree of medical certainty and have resulted in the permanent consequential limitation of use of a body organ or member," and also constitute a "significant limitation of use of the body function or system." (*Id.* ¶ 25.) Dr. Kaisman states his opinion, "within a reasonable degree of medical certainty, that the symptomologies and injuries to the lumbar spine and cervical spine that the patient presently exhibits are solely caused by the September 14, 2016 [sic] accident and not from [a] degenerative condition." (*Id.* ¶ 26.) Dr. Kaisman also states that these injuries "have prevented [Plaintiff] from performing many of the material acts which constitute his usual and customary daily activities since the date of the motor vehicle accident…. and [Plaintiff] was therefore advised to discontinue from engaging in any strenuous activities." (*Id.* ¶ 24.)

## G.  Effects of Injuries on Plaintiff's Life

In his affidavit of June 3, 2019, Plaintiff stated that he continues to "suffer from daily pain in my right shoulder, lower back and neck due to the subject accident of September 14, 2015." (Jung. Aff. ¶ 16.) In addition, due to the injuries, he "can no longer engage in the same activities as [he] used to engage in prior to the accident," for example, "sports activities such as indoor soccer, basketball, running and tennis." (*Id.* ¶ 18.) He stated, "my daily life has been significantly altered as a result.… Due to the pain, I had to stop working as a waiter in a restaurant because the work at the restaurant was too laborious." (*Id.*) He further stated that the injuries "played a role in me changing

my college major from civil engineering to economic[s] because the engineering major would have required me to go out to field [sic] too often." (*Id.*)  He also stated that since the accident he has "difficulties doing any strenuous work and activities, sleeping and lifting heavy objects." (*Id.*)

### H.    Defendants' Biomechanics Expert Affidavit

Defendants submitted the affidavit of Samuel Wordeman, Ph.D., a biomechanist, who reviewed the crash report; photographs, repair estimates, and data reports of the two vehicles involved; data sheets of the model and make of the vehicles; deposition transcripts of Plaintiff and Defendant Kelly; and Plaintiff's medical records.  (Ex. L to Temple Decl., Affidavit of Samuel L. Wordeman, Ph.D. ("Wordeman Aff."), Ex. 1 at 2, Dkt. 45-12.)  Dr. Wordeman concluded that "[n]o significant motion of the plaintiff's body relative to the interior of his vehicle would have occurred as a result of the subject accident."  (Wordeman Aff. ¶ 6.)  Dr. Wordeman concluded "[t]o a reasonable degree of biomedical and scientific certainty" that the accident "did not create the injury mechanisms necessary to cause" an injury to the cervical spine, lumbar spine, or shoulder. (Wordeman Aff. ¶¶ 7-9.)

## II.    <u>Procedural Background</u>

Plaintiff filed the Complaint in the Supreme Court of New York, Queens County, and on November 2, 2016, the case was removed to this court based on diversity of citizenship.  (Dkt. 1.) The parties consented to Magistrate Judge jurisdiction.

After the conclusion of discovery, Defendants filed the Motion,[4] moving for summary judgment on the basis that Plaintiff has not met his threshold burden of establishing a casually related "serious injury" under New York Insurance Law Section 5102(d).  (Dkt. 43.)  Plaintiff filed an opposition (Dkt. 49-52), and Defendants filed a reply (Dkt. 53).

---

[4] The Motion erroneously named Wheels LT even though it was dismissed from this case on March 8, 2019.

## DISCUSSION

### I. Legal Standard

Rule 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, a party must show something more than "some alleged factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in the original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The nonmoving party must "make a sufficient showing on an essential element of [the nonmoving party's] case with respect to which [the nonmoving party] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without such a showing, summary judgment will be entered because there is "no genuine issue as to any material fact… [A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (internal quotations omitted).

A "genuine" dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "It is the movant's burden to show that no genuine factual dispute exists…." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial and may not rely only on allegations in its pleadings. *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) ("[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment.").

A court resolving a motion for summary judgment draws all reasonable inferences and resolves all ambiguities in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

10

## II.   New York's "No Fault" Insurance Law

New York Insurance Law Section 5104(a) precludes plaintiffs from recovering for non-economic loss resulting from a motor vehicle accident unless they have suffered a "serious injury." Section 5102(d) defines "serious injury" as any of nine categories of personal injury.  Here, Plaintiff has alleged (1) permanent loss of use of a body organ, member, or function, (2) permanent consequential limitation of use of a body organ or member; (3) significant limitation of use of a body function; and/or (4) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment (hereinafter, the "90/180-day category").  ("Pl. Memo of Law", Dkt. 51 at 4.)

"To recover for non-economic losses under the No-Fault law, plaintiffs must show both that they sustained a serious injury and that the injury was 'proximately caused by the accident at issue.'" *Kang v. Romeo*, 18-cv-4033 (ARR)(SMG), 2020 WL 4738947, at *8 (E.D.N.Y. Aug. 14, 2020) (quoting *Evans v. United States*, 978 F. Supp. 2d 148, 164 (E.D.N.Y. 2013)).

### A.   Serious Injury

"[A] court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (citing *Licari v. Elliott*, 57 N.Y.2d 230, 236 (N.Y. 1982)).  In deciding a summary judgment motion, courts apply a burden-shifting framework.  *Id.*  "A defendant must first establish a *prima facie* case that the plaintiff did not sustain a "serious injury" that was causally related to the accident … [and] the plaintiff is then required to establish a *prima facie* case that he sustained a serious injury …."  *Id.* (quoting *Barth v. Harris*, 00-cv-1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)).

Defendants moving for summary judgment may meet their initial burden "by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them." *Kang*, 2020 WL 4738947 at *9 (internal quotations omitted).

In rebutting a defendant's *prima facie* case and showing that there is a material issue of fact, plaintiffs "must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury." *Yong Qin Luo*, 625 F.3d at 777. A plaintiff may rely upon quantitative measurements, such as "a numeric percentage of a plaintiff's loss of range of motion", or "qualitative assessment[s] … provided that the valuation has an objective basis …" *Id.* (quoting *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (N.Y. 2002). If a plaintiff presents "sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" *Ruffin v. Rana*, No. 11-CV-5406 (MHD), 2013 WL 4834368, at *7 (S.D.N.Y. Sept. 4, 2013) (quoting *Nasrallah v. Helio De*, 96-CV-8727(SS), 1998 WL 152568, at *8 (S.D.N.Y. Apr. 2, 1998)).

### B.    Causation

The same burden-shifting framework applies to the causation analysis. "When moving for summary judgment on the ground that the collision did not cause a serious injury, a defendant must submit adequate medical evidence supporting that contention." *Cross v. Lambombard*, 9 N.Y.S.3d 416, 415 (N.Y. App. Div. 3d Dept. 2015).

Courts routinely allow defendants to rely upon biomechanical expert testimony regarding the forces in a collision to establish causation, though not on the medical causes of injury. *See, e.g.*, *Manlapig v. Jupiter*, 14-CV-235 (LGS), 2016 WL 916425, at *3 (S.D.N.Y. Mar. 10, 2016) (collecting cases); *Malave v. Fernandez*, 16-cv-8100 (KPF), 2018 WL 3967665, at *7 (S.D.N.Y. Aug. 17, 2018) (defendants' biomechanical expert testimony created material issue of fact); *Seales v. United States*, 2019 WL 7753451, *11-15, 27 (E.D.N.Y. Oct. 21, 2019) (allowing and crediting testimony of

biomechanical expert at trial); *Plate v. Palisade Film Delivery Corp.*, 39 A.D.3d 835, 837 (N.Y. App. 2nd Dept. 2007) (holding that lower court erred when it excluded biomechanical expert's testimony regarding "force of the impact in the subject accident [and whether it] could have caused a serious injury…").

If the defendant meets its burden of showing a lack of causation, "the burden shifts to the plaintiff to come forward with evidence addressing the defendant's claimed lack of causation." *Perpall v. Pavetek Corp.*, 12-cv-0336 (PKC), 2017 WL 1155764, at *12 (E.D.N.Y. Mar. 27, 2017) (quotations and citations omitted); *see also Cross*, 9 N.Y.S.3d at 415 ("plaintiff then has the burden to come forward with objective medical evidence sufficient to create a question of fact regarding the existence of a serious injury caused by the accident."); *Pommells v. Perez*, 4 N.Y.3d 566, 574 (N.Y. 2005) (after defendant establishes its *prima facie* case, "plaintiff [has] the burden to present objective medical proof of a serious injury causally related to the accident in order to survive summary dismissal.")

An expert's opinion or a plaintiff's statements cannot establish causation unless supported by objective evidence. *See, e.g., id.; Toure*, 98 N.Y.2d at 351 ("an expert's opinion unsupported by an objective basis may be wholly speculative…"). Conclusory statements as to causation are not sufficient. *See Kang*, 2020 WL 4738947 at *8 ("… a plaintiff's self-serving and conclusory statements regarding causation are insufficient to raise a triable issue of fact if not corroborated by objective medical evidence.") (and collecting cases). An expert's opinion on causation is "conclusory" where the expert "opines, in conclusory fashion, that [a p]laintiff's … injury is 'causally related' to the [] accident, but offers no explanation or rationale for that opinion." *See Manzi v. Davey Tree Expert Co.*, 977 F. Supp. 2d 150, 158 (E.D.N.Y. 2013).

III.   **Analysis**

Defendants argue that there is no evidence in the record to support either that Plaintiff

suffered a serious injury or that the September 14, 2015 collision caused his injuries, and thus summary judgment is warranted. ("Defs.' Memo of Law", Dkt. 46 at 10.) Plaintiff argues in opposition that Defendants have failed to meet their *prima facie* burden on either the absence of a serious injury or causation, and even if they did meet their burden, Plaintiff's evidence raises material questions of fact such that summary judgment is not warranted. (*See generally* Pl. Memo of Law.)

### A.    Serious Injury

#### 1.    *Permanent Loss of Use of a Body Organ, Member, Function, or System*

To succeed on a claim of permanent loss of use of a body organ, member, function, or system, a plaintiff must show "total loss of use." *Oberly v. Bangs Ambulance Inc.*, 96 N.Y.2d 295, 297 (N.Y. 2001).

While Defendants argue that the "permanent loss" category of serious injury requires the "total loss of use of some body part or bodily function" (Defs. Memo of Law at 13), they do not expressly analyze that standard as it applies to the facts here. Nevertheless, Defendants argue that their expert reports "concluded that there were no permanent or significant orthopedic or neurological impairments resulting from the soft-tissue injuries alleged [by Plaintiff]." (*Id.* at 17.) Indeed, Defendants' medical experts opined that Plaintiff suffered "no objective, clinical, neurologic deficits" (Lechtenberg Eval. at 5) and that there was "no objective evidence of continued disability" (Toriello Eval at 4). Defendants thus established their *prima facie* case with respect to permanent loss of use.

Plaintiff provides no evidence or analysis that supports total permanent loss of use of any body part or bodily function.[5] While the medical reports indicate that Plaintiff's injuries resulted in

---

[5] Plaintiff argues in opposition that total loss is not necessary for permanent loss, citing to several intermediate New York appellate court decisions that pre-date *Oberly*. (Pl. Memo of Law at 18-19.) Even if these cases supported Plaintiff's contention, the later-decided New York Court of Appeals decision unambiguously requires total loss, and that decision controls.

permanent consequential *limitations* on use of a body organ or member, they do not indicate a *total loss* of such use.  (See Pl. Memo of Law at 20.)  As such, Plaintiff has failed to rebut Defendants' *prima facie* case, and summary judgment is granted with respect to the permanent loss of use category.

### 2. Permanent Consequential Limitation of Use of a Body Organ or Member

"[T]to show a 'permanent consequential limitation of use of a body organ or member,' plaintiff must present evidence that []he has suffered a permanent limitation that, though not total, is of sufficient severity to be deemed consequential in comparison to [his] prior non-injured condition." *Ruffin*, 2013 WL 4834368 at *12.  Consistent with the plain meaning of the statute, the injury must be "permanent."  *See Oberly*, 96 N.Y.2d at 299.

In evaluating whether an injury constitutes a permanent "consequential limitation" under the no-fault law, courts apply the same standard as for a "significant limitation," with the only difference between the two categories of serious injury being whether the injury is permanent or not.  *See Avlonitis v. United States*, 16-cv-2521 (PKC)(SMG), 2020 WL 1227164, at *6 (E.D.N.Y. Mar. 13, 2020) ("'With the exception that the plaintiff prove permanence to satisfy the 'consequential limitation' definition, 'significant limitation' is essentially identical.'") (quoting *Williams v. United States*, 09-cv-933 (GLS)(CFH), 2014 WL 11460892, at *8 (N.D.N.Y. Jan. 28, 2014); *see also Toure*, 98 N.Y.2d at 352-353 (analyzing the two categories of serious injury together).  "Whether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure*, 98 N.Y.2d at 353 (quoting *Dufel v. Green*, 84 N.Y.2d 795, 798, (N.Y. 1995).  The injury must be "more than minor, mild, or slight, and the claim must be supported by medical proof based upon credible medical evidence of an objectively measured and quantified medical injury or condition." *Evans*, 978 F. Supp. 2d at 165 (*quoting Oved v. Salotti*, 98-cv-5628 (BSJ), 2000 WL 1099926, at *1 (S.D.N.Y. Aug. 7, 2000).  An expert's description

of the percentage loss of range in motion and other objective qualitative assessments of significant injuries can establish a consequential limitation.  *See Toure*, 98 N.Y.2d at 353.

To support their *prima facie* case, Defendants submitted reports of their medical experts who conducted independent medical examinations of Plaintiff and "concluded that there were no permanent or significant orthopedic or neurological impairments resulting from the soft-tissue injuries alleged." (Def. Memo at 17.)  Dr. Lechtenberg based his conclusion on visual and goniometric inspection and wrote that Plaintiff had "no objective, clinical, neurologic deficits" and had a "good" neurologic prognosis.  (Lechtenberg Eval. at 4-5.)  Dr. Toriello, using visual inspection and a "handheld goniometer or an inclinometer," concluded that Plaintiff "did not sustain any injury to his neck, lower back or right shoulder … that would have required surgical intervention." (Toriello Eval. at 5.)  Thus both Dr. Lechtenberg and Dr. Toriello concluded that Plaintiff did not suffer a consequential limitation of use of any body organ or member.

Both of Defendants' experts also concluded based on objective medical evidence that at the time of their examinations of Plaintiff that he did not suffer from any ongoing limitations, and thus he suffered from no permanent limitations.  (Lechtenberg Eval. at 4-5; Toriello Eval at 5.)

Defendants established their *prima facie* case.  Their experts relied upon objective medical evidence to conclude that, to the extent Plaintiff suffered any injuries, they did not cause a permanent consequential limitation in any body part.  *See, e.g.*, *Komar v. Showers*, 227 A.D.2d 135, 136 (N.Y. App. 1st Dept. 1996) (sprains or strains not sufficient to establish serious injury); *Shepley v. Helmerson*, 306 A.D.2d 267, 268 (N.Y. App. 2nd Dept. 2003) (cervical strain and mildly diminished range of motion insufficient to establish significant limitation); *Shinn v. Catanzaro*, 1 A.D.3d 195, 197 (App. Div. 1st Dept. 2003) (defendant met her initial burden by submitting sworn affirmation of

examining chiropractor who concluded that neither plaintiff was seriously nor permanently injured).[6]

Plaintiff has rebutted Defendants' *prima facie* case with objective evidence.  Based on range of motion tests using a goniometer that specified a numerical reduction in range of motion, surgical exams, palpation, and MRI reviews, Dr. McMahon concluded that Plaintiff's injury to his right shoulder, cervical spine, and lumbar spine will have lifelong impacts and cause Plaintiff "pain, [present] difficulty with activities of daily living, and [require] activity and lifestyle modifications." (*See* McMahon Aff. ¶¶ 27-29.)  Dr. Kaisman similarly concluded based on his examinations on June 2, 2016, June 14, 2016, and November 16, 2017, a review of Plaintiff's relevant medical records, including MRI films, and the percutaneous discectomies performed on June 10, 2016 and June 24, 2016, that "[Plaintiff] will likely have lifelong problems including:  pain, difficulty with activities of daily living, and activity and lifestyle modifications …"  (Kaisman Aff. ¶¶ 20-21.)  Both experts advised Plaintiff to "discontinue from engaging in any strenuous activities" and that he would suffer "significant limitation of use of [his] right shoulder, lumbar spine and cervical spine."  (McMahon Aff. ¶¶ 32-33; Kaisman Aff. ¶¶ 24-25.)  These expert findings are sufficient to raise a question of fact that precludes summary judgment.  *See Toure*, 98 N.Y.2d at 353; *see also Williams v. Ritchie*, 139 F. Supp. 2d 330, 340 (E.D.N.Y. 2001) ("a medical affidavit specifying 'the degree of restriction of movement suffered' and 'the objective tests performed to determine such restriction of movement'" is sufficient to establish consequential limitation) (quoting *Merisca v. Alford*, 243 A.D.2d 613, 663

---

[6] Plaintiff argues that Defendants failed to make their *prima facie* case because their medical experts "failed to conduct necessary objective test[s] such as Spurling or Compression test[s] to assess Plaintiff's spine injuries." (Dkt 51 at 7.)  The cases Plaintiff cites do not hold that those particular tests are necessary to establish Defendants' *prima facie* case.  *Compare Florez-Bossio v. Rodriguez*, No. 601317/09, 2011 WL 6297916, at *4 (N.Y. Sup. Ct. Nov. 28, 2011); *Perez v. Rodriguez*, 25 A.D.3d 506, 510 (2006); *Vincent v. Metropolitan Suburban Bus Authority*, No. 8137/10, 2011 WL 6332404, at *1 (N.Y. Sup. Ct. Dec. 06, 2011); A*ltman v. The New York Transit Authority*, No. 400604/2010, 2011 WL 6936620 (N.Y. Sup. Ct. Dec. 19, 2011).  Defendants provided other objective evidence as described above.  Similarly, Plaintiff challenges Dr. Toriello's failure to review Plaintiff's "MRI film, as opposed to reviewing just a MRI report."  (Pl. Memo of Law at 8.)  Dr. Toriello's report notes that he "reviewed the MRI" of Plaintiff's cervical and lumbar spine and right shoulder.  (Toriello Eval. At 4.) In any event, Plaintiff cites to no law suggesting that that MRI film review is necessary to carry Defendants' burden or that Dr. Toriello's review of the objective MRI reports is insufficient.

N.Y.S.2d 853, 854 (N.Y. App. 2d Dept. 1997)).

The Court finds that Plaintiff has sufficiently rebutted Defendants' *prima facie* case for a serious injury based on permanent consequential limitation of use of a body organ or member, and therefore denies summary judgment on this category of serious injury.

> 3.    *Significant Limitation of Use of a Body Function or System*

Because the significant limitation category is essentially the same as the category of permanent consequential limitation, but without the requirement of permanence, *see Avlonitis*, 2020 WL 1227164 at *6, Defendants have met their *prima facie* burden for the same reasons as above, and Plaintiff has rebutted with material issues of fact.  The Court therefore denies summary judgment as to the serious injury category of significant limitation of use of a body function or system.

> 4.    *The 90/180-Day Category*

To establish a serious injury under the 90/180-day category, Plaintiff is not required to show that an injury was "significant" or "consequential."  *Toure*, 98 N.Y.2d at 357.  However, Plaintiff must show that the injury prevented him from engaging in "substantially all the material acts" of his "usual and customary activities" for ninety out of the first 180 days following the collision.  *See Yong Qin Luo*, 625 F.3d at 779.  Plaintiff must show that the medically determined injury "curtailed [him] from performing his usual activities to a great extent rather than some slight curtailment."  *Licari v. Elliott*, 57 N.Y.2d 230, 236 (N.Y. 1982).  "[T]he ninety days requirement must be taken literally." *Kang*, 2020 WL 4738947 at *32 (internal quotations omitted, alteration in original).

Defendants have established their *prima facie* entitlement to summary judgment on the 90/180-day category.  Defendants do not rely on their medical experts to establish their *prima facie* case on this category.  Defendants instead refer to Plaintiff's testimony at his deposition to argue that he was not prevented from performing substantially all his usual daily activities for ninety of the 180 days following the accident.  (Def. Memo of Law at 18-19; Dkt. 53 ¶¶ 13-14.)  Defendants cite

to record evidence that Plaintiff's home confinement was limited to at most three days following the accident and three to four days after each of his procedures. (Def. Memo of Law at 18; Jung Dep. at 140, 142.) Although Plaintiff testified at his deposition that his pain made him fearful of and led him to stop participating in sports, there were no contemporaneous records from his treating physician urging him to give up those activities. (Def. Memo of Law at 19; Jung Dep. at 127-28.) Defendants also refer to Plaintiff's deposition testimony in which Plaintiff explains that he was enrolled at Hunter College studying accounting at the time of the accident, and that he transferred back to City College not because of the car accident, but because he "didn't like accounting." (*See* Def. Memo of Law at 18; Jung Dep. at 14.) Defendants also cite to Plaintiff's deposition testimony to show that he rode the subway, worked at several restaurants following the collision, and never required assistance with home care or made any physical modifications to his home to accommodate his injuries. (Def. Memo of Law at 18-19; Jung Dep. at 14-16, 32-33, 111, 126.) Defendants have met their initial burden.

Plaintiff fails to rebut Defendants' *prima facie* case. Plaintiff argues in opposition that Dr. Kaisman and Dr. McMahon[7] found, based on review of objective evidence, including MRI results and Plaintiff's medical treatment history following the collision, that Plaintiff's injuries prevented him from performing many of the material acts that constituted his usual and customary daily activities since the date of the collision. (Pl. Memo of Law at 11; McMahon Aff. ¶ 32; Kaisman Aff. ¶ 32.) Both Drs. Kaisman and McMahon advised Plaintiff "to discontinue from engaging in any strenuous activities." (McMahon Aff. ¶ 32; Kaisman Aff. ¶ 32.) But these conclusions do not address the strict requirement that Plaintiff have been unable to engage in "substantially all the material acts" of his "usual and customary activities" for ninety of the 180 days immediately

---

[7] Plaintiff's memorandum references Defendants' experts by name but cites to the affidavits of his own doctors. The reference to Defendants' experts is assumed to be a typographical error.

following the collision.  N.Y. Ins. Law 5102(d).

There is no evidence in the record that Plaintiff was prevented from working for ninety days in the immediate 180 days following the accident.  While Plaintiff states that he could no longer work as a waiter after the accident (Jung. Aff. ¶ 18), he does not specify when this change occurred, whether it was within 180 days following the accident, and how long it lasted.  Likewise, there is no evidence in the record that Plaintiff was unable to attend school for ninety of the 180 days following the accident.  While he states that the accident played a role in his decision to change his college major from civil engineering to economics (Jung. Aff. ¶ 18), Plaintiff does not state whether this change occurred within the 180 days following the accident, or how it constituted an inability to perform substantially all his usual and customary activities for 90 days during this time period.

Finally, although Plaintiff states that "after the accident of September 14, 2015, I have difficulties doing any strenuous work and activities, sleeping and lifting heavy objects" (Jung Aff. ¶ 18), he fails to specify that any of these difficulties occurred for ninety days during the 180 days following the accident.  The affirmations from Drs. Kaisman and McMahon, while undated, are from sometime after their examinations of Plaintiff in 2017, and do not specify that their advice to Plaintiff not to engage in strenuous activities occurred within the 180-day period immediately following the accident.

Construing the record in the light most favorable to the Plaintiff, he has only shown incapacity for, at most, three days following the accident (Jung Dep. at 142) and four days following surgery on October 21, 2015 (Dkt. 50-1 ¶ 16(c)).[8]  Assuming this home confinement meets the statutory requirements for the 90/180-day category, it is only for a total of, at most, seven days. Given this minimal home confinement within the relevant period and given the absence of any

---

[8] Plaintiff's other surgeries and subsequent home confinement were after March 12, 2016, the end of the 180-day window.  (*Cf.* Dkt. 50-1 ¶ 16)

additional evidence that he was unable to perform substantially all his usual and customary daily activities during this time period, Plaintiff has failed to rebut Defendants' *prima facie* case.

Summary judgment is therefore granted on the 90/180-day category.

**B.      Causally Related**

Defendants establish their *prima facie* case that the accident did not cause Plaintiff's serious injury.  Defendants do not argue or put forth any objective medical evidence that there was some alternative cause of Plaintiff's injuries following the collision.  Instead, Defendants rely on Dr. Wordeman's biomechanical analysis, which states that the accident could not have caused Plaintiff's alleged injuries.  (Def. Memo of Law at 17.)  Dr. Wordeman's affidavit concludes, based on the objective evidence he reviewed, including the crash report; photographs, repair estimates, and data reports of the two vehicles involved; data sheets of the model and make of the vehicles; deposition transcripts of Plaintiff and Defendant Kelly; and Plaintiff's medical records and his expert knowledge of "the laws of physics … that [because of the collision] plaintiff would have moved slightly leftward and rearward relative to the interior of the vehicle." (Wordeman Aff. ¶¶ 3-6.)  He further concludes that "the subject accident did not create the injury mechanisms necessary to cause" Plaintiff's injuries.  (*Id.* ¶¶ 7-9.)  *Compare Malave*, 2018 WL 3967665 at *7 (defendants' burden upheld on summary judgment based in part on defendants' biomechanist finding that low-speed crash did not create necessary injury mechanisms to cause plaintiff's injuries).

Plaintiff's bare arguments challenging Dr. Wordeman's analysis either require credibility determinations, which are not appropriate on summary judgment, or are incorrect.  Contrary to Plaintiff's assertion that Dr. Wordeman provides no basis for his findings (Pl. Memo of Law at 15), Dr. Wordeman does specify what records he relied upon in coming to his conclusions.  (Wordeman Aff. ¶ 3; Dkt. 45-12 at 7.)  Plaintiff's contention that biomechanical analysis is "junk science" (Pl. Memo of Law at 16) has been squarely rejected by New York courts.  *Guerra v. Ditta*, 127 N.Y.S.3d

21

148, 150 (N.Y. App. 2d Dept. 2020) ("… biomechanical engineering is a scientific theory accepted in the field"). Plaintiff cites no case law supporting his contention that Dr. Wordeman was required to perform any in-person inspection of the vehicles or Plaintiff, rather than relying on evidence in the record. Dr. Wordeman's expert report and affidavit are proper support for Defendants' Motion, and Defendants' biomechanical expert testimony satisfies their initial burden.

Defendants argue that Plaintiff fails to rebut Defendants' *prima facie* case because he failed to put forward "competent medical evidence linking the diagnosis to the accident at issue (and scientifically eliminating other causes)…" (Def. Memo of Law at 16.) Contrary to Defendants' arguments, however, Plaintiff does provide objective medical evidence that links Plaintiff's injuries to the accident, satisfying his rebuttal burden at this stage. As Plaintiff correctly notes, Drs. Kaisman and McMahon were not required to specifically refute Defendants' biomechanical expert as to the forces involved in the accident in order to meet his burden. Instead, Plaintiff's experts provided medical testimony based on objective evidence, including Plaintiff's medical history, MRI films, and their own procedures and examinations to conclude that Plaintiff's injuries were caused by the collision. *See, e.g.*, *Altman v. Shaw*, 184 A.D.3d 995, 997-98 (N.Y. App. 3d Dept. 2020) (plaintiff met burden to withstand summary judgment based solely on medical reports even where defendant offered biomechanist evidence). Defendants do not argue that the injuries were caused by a degenerative condition; and in any event, Drs. Kaisman and McMahon both state that the injuries were not so caused. (Kaisman Aff. ¶¶ 23, 26[9]; McMahon Aff. ¶¶ 31, 34.)

Defendants contend that Plaintiff's medical experts fail to address Plaintiff's gap in treatment or Plaintiff's 2017 collision. (Def. Memo of Law at 17-18.) However, Dr. McMahon does address the gap in treatment and acknowledges, consistent with Plaintiff's affirmation, that Plaintiff

---

[9] Dr. Kaisman's affidavit incorrectly states that the accident occurred on September 14, 2016. This is assumed to be a typographical error, and that Dr. Kaisman intended to refer to the September 14, 2015 accident.

stopped treatment because his no fault benefit was terminated and he could no longer afford treatment.  (McMahon Aff. ¶ 4.)  With respect to the 2017 collision, both of Plaintiff's experts reference the collision in their affirmations, and state that the injuries resulting from that collision were not related to the injuries Plaintiff alleges here.  (Kasiman Aff. ¶ 9; McMahon Aff. ¶ 10.)

Whether the factfinder chooses to credit Defendants' biomechanical expert, Plaintiff's medical experts, or something else entirely is not for the Court to resolve at this stage.  For purposes of summary judgment, Plaintiffs have raised a triable issue of fact as to causation, and summary judgment is denied.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment as to the permanent loss of use and 90/180-day categories of serious injury.  Summary judgment is denied for the significant limitation and permanent consequential limitation categories, and is denied with respect to causation.

**SO ORDERED:**

*Peggy Kuo*

United States Magistrate Judge

Dated:    Brooklyn, New York
          November 30, 2020

23